UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      No. 3:20-CR-20587

-vs-                                    Hon. Matthew F. Leitman

BRANDON JOHNSON,

        Defendant.
_____/

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING AND MOTION FOR DOWNWARD DEPARTURE

The United States of America respectfully submits this memorandum in aid of the sentencing of Brandon Johnson. On January 14, 2021, the defendant pleaded guilty to two counts of subscribing and filing false tax returns in violation of 26 U.S.C. § 7206(1). As calculated by United States Probation (PSR dated April 15, 2021) the defendant's applicable total offense level was 23, and his criminal history category was I, resulting in an advisory Guidelines range of 46 to 57 months. This range is the same as that recommended by the parties in the plea agreement (PA) (PA at ¶ 9D.) However, under recently promulgated USSG § 4C1.1 (the "zero-point offender" adjustment) the defendant may be entitled to an additional two-level decrease in his offense level to level 21, corresponding to 37-

46 months. At all events, pursuant to USSG § 5K1.1 the government moves for a departure reflecting the defendant's substantial assistance to the government, and the United States respectfully requests that the Court sentence the defendant to 25 months of incarceration.

## I. BACKGROUND

Defendant Brandon Johnson was president of Company A, which was a family-owned business. Starting around 2008, the defendant began embezzling funds from Company A by making checks payable to Matthew Adams[1] or to Adams' business, MDA Property Services (MDA). Johnson used the embezzled funds pay Adams for opioid drugs. The drugs supplied by Adams were typically varieties of the pharmaceutical OxyContin[2] in the form of pills. To conceal the embezzlement, Johnson manipulated Company A's records. Johnson did not report the funds he misappropriated as income on any of his individual income tax returns. Consequently, Johnson's tax returns were false for several years in a row.

In connection with a civil audit of Adams, a Revenue Agent of the Internal Revenue Service (IRS) went to the offices of Company A to inquire about large

---

[1] In a separate case before this Court, *United States v. Matthew D. Adams* (23-CR-20013), Adams pled guilty to one count of money laundering, in violation of 18 U.S.C. § 1957 and one count of corruptly endeavoring to obstruct the due administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a). The money laundering charge was based upon how Adams handled the millions of dollars that he received from Brandon Johnson in exchange for opioid pills. Last month, Adams was sentenced to 36 months in prison, 3 years of supervised release and was ordered to pay $3,354,973 in restitution to the IRS.

[2] OxyContin is a prescription opioid painkiller containing oxycodone, a Schedule II controlled substance. *See United States v. Renner,* 281 Fed.Appx. 529, 531, 2008 WL 2467976, at *1 (6th Cir. 2008).

payments by Company A to Adams. The Revenue Agent intended to interview Johnson regarding the payments to Adams; however, Johnson was not in the office at the time. Instead, the Revenue Agent inquired of Johnson's brother who was also an officer of the family business. When the Revenue Agent showed him records of the large payments to Adams, Johnson's brother could not explain them. After the visit by the Revenue Agent, Johnson was questioned by his family about the payments. He admitted to embezzling funds from the business to pay for his undisclosed opioid addiction. Johnson was terminated by Company A and went to a rehabilitation program in Florida. Johnson appears to have successfully completed drug rehabilitation and maintained abstinence since then.

The accounting system at Company A required vendor invoices to be entered into the company's QuickBooks software. Unbeknownst to company staff, Johnson took checks out of the accounting office and printed corresponding checks payable to Adams and MDA from the company QuickBooks software. To conceal these transactions, Johnson deleted the checks from QuickBooks and later re-entered the checks into the software under a different vendor name. At the end of the year, Johnson changed the vendor name back to MDA in QuickBooks such that IRS Form 1099 Miscellaneous Income information returns would be issued properly to the other vendors.

Johnson filed Form 1040 U.S. Individual Income Tax Returns for 2008-2015

that were false because they failed to report as income the money he embezzled to purchase drugs from Adams. Johnson further failed to file his individual tax returns for 2016 and 2017. Paragraph 12 of the PSR correctly lays out the amount of taxable income reported by Johnson, the unreported misappropriated funds, the self-assessed tax per the return, the corrected tax in light of the unreported income, and the additional tax due for each year. The total amount of income that Johnson failed to report for the 2008-2017 years was over $12 million. The total 2008-2017 tax loss attributable to the defendant's misconduct, excluding interest and penalties, is $4,808,156. This is the stipulated tax loss set forth in the plea agreement (PA ¶ 9C.)

## II. SENTENCING CALCULATION

### A. Statutory Maximums

A violation of 26 U.S.C. § 7206(1) carries a maximum sentence of 3 years' imprisonment and a fine of not more than $250,000. It also carries a term of supervised release of not more than one year, pursuant to 18 U.S.C. § 3583(b)(3). In this case, the defendant pled guilty to two section 7206(2) counts, so the maximum prison term to which he could be sentenced is 6 years.

### B. Applicable Sentencing Guidelines

The United States Sentencing Guidelines are not mandatory. *United States v. Booker*, 542 U.S. 220 (2005). The Supreme Court has made clear, however, that

even though the Guidelines are advisory, they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). Thus, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. at 49.

The government agrees with the Guidelines calculation in the PSR dated April 15, 2021:

| | |
|---|---|
| Base Offense Level: | 24 (§§ 2T1.1, 2T4.1(j)) |
| Specific Offense Characteristics | +2 (§ 2T1.1(b)(1)) failure to report income from criminal activity, |
| Total Offense Level | 26 |
| Acceptance of Responsibility | -2 (§ 3E1.1(a)) |
| Acceptance of Responsibility | -1 (§ 3E1.1(b)) Timely plea of guilty, |
| Total Offense Level | 23 |
| Criminal History Category | I |
| Guidelines Range: | 46 – 57 months |

However, as indicated above, it appears that the defendant may be eligible for the "zero-point offender" adjustment recently promulgated at USSG § 4C1.1. This would result in an additional two-level decrease in his offense level to level 21, corresponding to 37-46 months of imprisonment.

### C. USSG § 5K1.1 Downward Departure

Defendant Johnson was initially interviewed by civil Revenue Agents. He was later interviewed by Special Agents of IRS-Criminal Investigation three more times.  One of these meetings was also attended by an attorney for the government. He described his addiction to opioid pills and how he had begun purchasing them from Matthew Adams. Johnson recounted that Adams typically supplied him with 80 milligram OxyContin pills.  However, Adams sometimes provided other dosages of OxyContin or similar opioid pills such as Roxicodone.  Johnson recalled that, by 2014, he was purchasing 80 milligram pills in quantities of a thousand at a time from Adams.  All of the pills were for Johnson's personal use.

Defendant Johnson voluntarily supplied the Special Agents with a cellular telephone that he had used to communicate with Adams about his drug purchases. The forensic analysis of the telephone provided contemporaneous corroboration of Johnson's 2017 drug dealings with Adams.

The foregoing information supplied by defendant Johnson regarding the true purpose of the hundreds of payments he made to Adams during the prosecution period was essential to proving the money laundering violation of 18 U.S.C. § 1957 to which Adams ultimately pled guilty.  To prove a section 1957 violation, the government must, *inter alia*, demonstrate that the defendant engaged in a monetary transaction involving criminally derived property from a specified unlawful activity.  In the case of Adams, the specified unlawful activity was

distributing oxycodone, a Schedule II controlled substance. *See* 21 U.S.C. § 841(a)(1). Without the drug purchase information from Johnson, the government would not have been able to prove this element of money laundering in the case of Matthew Adams.

During the interviews, Johnson also explained how, at Adams' request, he added money to payments he made to Adams to cover taxes that Adams would owe because he was being issued Forms 1099 by Company A. Based on his agreement with Johnson, Adams should have relied on the Forms 1099 to prepare his tax returns. Instead, Adams directed his tax preparer to use bank records that did not capture checks he was cashing at a liquor store. Accordingly, the information given by Johnson about how Adams handled his tax obligations assisted the government in its prosecution of Adams for obstructing the IRS.

For the foregoing reasons, the government has determined that defendant Johnson has rendered substantial assistance to the government in the investigation and prosecution of Matthew Adams. Pursuant to USSG. § 5K1.1 the government moves for a departure reflecting the defendant's substantial assistance, and the United States respectfully requests that the Court sentence the defendant to 25 months of incarceration.

**D.  Restitution**

For Title 26 tax offenses, restitution may be ordered as an independent part of the sentence if the defendant agrees to pay restitution in a plea agreement (18 U.S.C. § 3663(a)(3)). In this case, defendant Johnson agreed to pay restitution to the IRS in the amount of $4,808,156 (PA ¶ 10E1). The defendant further agreed to pay Title 26 interest on the restitution amount (PA ¶ 10E2). The following table lists tax and interest due from the defendant by tax year for a grand total of $7,094,535.

**BRANDON JOHNSON RESTITUTION PLUS INTEREST, 2008-2017**

| Tax year | Income Tax Due | Due date of return | Sentencing date | Interest | |
|---|---|---|---|---|---|
| 2008 | $9,915 | 4/15/2009 | 5/6/2024 | $8,494 | |
| 2009 | $84,840 | 4/15/2010 | 5/6/2024 | $66,506 | |
| 2010 | $65,433 | 4/15/2011 | 5/6/2024 | $46,993 | |
| 2011 | $176,285 | 4/15/2012 | 5/6/2024 | $116,286 | |
| 2012 | $351,603 | 4/15/2013 | 5/6/2024 | $214,773 | |
| 2013 | $572,980 | 4/15/2014 | 5/6/2024 | $322,643 | |
| 2014 | $503,919 | 4/15/2015 | 5/6/2024 | $260,476 | |
| 2015 | $811,886 | 4/15/2016 | 5/6/2024 | $382,708 | |
| 2016 | $1,234,469 | 4/15/2017 | 5/6/2024 | $510,825 | |
| 2017 | $996,826 | 4/15/2018 | 5/6/2024 | $356,675 | |
| | $4,808,156 | | | $2,286,379 | $7,094,535 |
| | | | | | Grand total |

Accordingly, the government requests that the Court order the defendant to pay $7,094,535 in restitution as specified above.

### III.  3553(a) Factors

The Court is required to consider the factors laid out in 18 U.S.C. § 3553(a) in imposing a sentence sufficient, but not greater than necessary, to comply with

the purposes set forth in that statute.  In criminal tax cases, the paramount consideration for the Court at sentencing is "the need to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(3).  This case calls for a sentence of incarceration as recommended by the government, because of the need to preserve the integrity of the nation's self-reporting tax system, which necessitates that the relatively few criminals who are caught undermining and exploiting this system must be punished to deter others.

   Defendant Johnson cheated on his taxes for a decade.  The tax harm he caused runs into the millions of dollars.  He should not be seen by honest taxpayers as receiving only slight punishment for his misconduct.  A substantial term of imprisonment is called for in Johnson's case.

But for his substantial assistance, the government would be requesting a sentence of incarceration of 41 months[3] (assuming the Court found the defendant to be a "zero-point offender") as advisory under the Guidelines without a section 5K1.1 departure. However, in light of that assistance, the government respectfully requests that the Court sentence Brandon Johnson to a term of imprisonment of 25 months.

Dated: April 29, 2024

        Respectfully submitted,

        STUART M. GOLDBERG
        Acting Deputy Assistant Attorney
        General for Criminal Matters
        Department of Justice, Tax Division

By:   /s/J. McLellan
       Jeffrey McLellan
       Trial Attorney
       Dept. of Justice, Tax Division
       150 M. Street NE
       Washington, DC 20002
       Telephone No.: (202) 514-5181
       jeffrey.a.mclellan@usdoj.gov

---

[3] A term of 41 months is the approximate midpoint of the 37-46 month Guidelines range. Per PA ¶ 10B.1, the government agreed to recommend that the defendant's prison sentence not exceed the midpoint of the Guidelines range as determined by the Court.

## CERTIFICATE OF SERVICE

I certify that on this 29th day of April, 2024, I electronically filed a copy of the foregoing document with the Clerk of the Court using the ECF system. The ECF system will automatically serve counsel of record.

Respectfully submitted,

*/s/ Jeffrey McLellan*
Jeffrey McLellan
Trial Attorney
Dept. of Justice, Tax Division
150 M. Street NE
Washington, DC 20002
Telephone No.: (202) 514-5181
jeffrey.a.mclellan@usdoj.gov